**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MIHAJLO RISTIC, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 15-cv-8996 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| MACHINE ZONE, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mihajlo Ristic ("Ristic") brings this class action complaint against Defendant Machine Zone, Inc. ("Machine Zone") for alleged violations of the Illinois Loss Recovery Act and the Illinois Consumer Fraud and Deceptive Business Practices Act. Ristic seeks to recover gambling losses and damages that he allegedly incurred by playing the "Casino" in Machine Zone's "Game of War" videogame app. Currently before the Court is Machine Zone's motion to dismiss Ristic's First Amended Complaint for failure to state a claim [29]. For the reasons explained below, the Court grants Machine Zone's motion [29] and dismisses the First Amended Complaint with prejudice and will enter a final judgment under Rule 58. The Court also denies as moot Ristic's motion to certify a class [4] and Machine Zone's motion to dismiss Ristic's original complaint [20].

**I.     Background[1]**

Machine Zone produces a popular videogame titled "Game of War." This videogame is played on mobile devices and is available on both the Apple and Android platforms. [24] at ¶ 1. Players can download the game at no initial charge. Players have the option of spending real

---

[1] For purposes of this order, the Court assumes that all well-pled allegations in Ristic's First Amended Complaint [24] are true.

money in order to advance through the game at a faster pace and obtain more in-depth access. [24] at ¶ 2. This revenue model is commonly known as "free-to-play" or "freemium." [24] at ¶ 9. Due to the game's popularity, Machine Zone has generated more than $600 million in revenue since early 2014. [24] at ¶ 20.

The instant lawsuit focuses on the portion of the game known as the "Casino." In this part of the game, players are initially given a free spin on a virtual wheel. [24] at ¶ 24. The wheel uses an animated light that circles around the slots to indicate a spin. [24] at ¶ 29. Each "slot" on the wheel includes an in-game resource ("Prize") that the player receives if the animated light lands on a specific slot.

In order to spin the wheel, players click the "play" button. From that moment on, the player has no input on the outcome of the spin. [24] at ¶ 34. There is no skill necessary to acquire more desirable Prizes. *Id.* The outcome of the spin depends entirely on the algorithm that Machine Zone has programmed into the game. [24] at ¶ 35.

Not all Prizes are of the same importance to the player's gameplay advancement. Ristic alleges that some Prizes are worth more than the initial wager of $.60, while some Prizes are worth less. [24] at ¶ 30; see also *id.* at ¶ 26. The awards that are allegedly more valuable than the minimum wager range from $1.18 for 10,000 "chips" to $36.59 for 8,800 units of virtual "gold." [24] at ¶ 34. This valuation is derived from examining what the Prizes would cost in virtual "gold" (which can be purchased with real money) if the player were to purchase those items in the virtual marketplace versus obtaining them through the Casino.

Following the initial free spin, each spin costs a minimum of 5,000 "chips," which would cost $.60 to purchase. [24] at ¶¶ 25, 32. "Chips" can be acquired through different methods, including through an exchange for virtual "gold." Players can obtain virtual "gold" by

2

purchasing the *virtual* "gold" with *real* money. [24] at ¶ 20. Prices for virtual "gold" start at

$4.99 for 1,200 units and max out at $99.99 for 20,000 units. [24] at ¶ 26. The purchase of

virtual "gold", or any in-game purchase, is completely optional and voluntary. [24] at ¶ 20. In

addition to the normal playing mode, players can spin the wheel in a "High Roller Mode." [24]

at ¶ 28. This mode provides players with the potential to win more enticing Prizes. However, to

have access to this mode, players have to increase their wager. *Id.*

In early 2014, Ristic downloaded Game of War onto his smartphone. [24] at ¶ 46. After

his initial free spin in the Casino, Ristic began purchasing Chips to use for additional spins. In

total, between April 9, 2015 and October 9, 2015, Ristic spent more than $50 in Game of War

Casino wagers. [24] at ¶ 48. Ristic is unable to determine the exact amount he spent, but claims

it is likely more than $500. *Id.*

In Count I of his governing First Amended Complaint [24], Ristic alleges that Machine

Zone violated the Illinois Loss Recovery Act ("ILRA") by operating a gambling device that

caused Ristic and the other members of his proposed class to lose at least $50. See [24], ¶ 67. In

Count II, Ristic alleges that Machine Zone violated the Illinois Consumer Fraud and Deceptive

Business Practices Act ("ICFA") by engaging in unfair conduct—namely, violating Illinois'

gambling laws. Currently before the Court is Machine Zone's motion to dismiss the First

Amended Complaint for failure to state a claim. See [29].

## II.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint first must comply with Rule

8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to

relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim

is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  However, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (ellipsis in original).  Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558.  The Court reads and assesses the plausibility of a party's complaint as a whole.  See *Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir. 2011).

III.    **Analysis**

      A.    **The Illinois Loss Recovery Act**

Ristic brings his two Illinois state law claims in this Court as a purported class action under 28 U.S.C. § 1332(d)(2). His first claim alleges a violation of the ILRA, which allows "any person who by gambling shall lose to any other person, any sum of money or thing of value, amounting to the sum of $50 or more" to "sue for and recover the money or other thing of value . . . in a civil action against the winner thereof, with costs, in the circuit court."  720 ILCS 5/28-8(a).  To state a claim under the ILRA, Ristic must allege: (1) that he has "los[t] to any other person, any sum of money or thing of value, amounting to the sum of $50 or more"; (2) that the loss occurred through the act of "gambling"; and (3) that Machine Zone is the "winner" of Ristic's gambling loss.  *Id.*

4

Machine Zone argues that Ristic's ILRA claim must be dismissed for three reasons: (1) Ristic has suffered no gambling loss; (2) use of Game of War's Casino does not constitute "gambling"; and (3) Machine Zone is not a "winner" of gambling losses. The Court finds it unnecessary to address Machine Zone's first two arguments, because the third is dispositive, for the same reasons set forth in *Sonnenberg v. Amaya Group Holdings (IOM) Ltd.*, 810 F.3d 509, 510 (7th Cir. 2016), and *Phillips v. Double Down Interactive LLC*, 2016 WL 1169522 (N.D. Ill. Mar. 25, 2016).

Ristic does not plausibly allege that Machine Zone was the "winner" of his alleged gambling losses. A gambling winner is the person to whom a gambling loser has lost. *Sonnenberg*, 810 F.3d at 510. In *Sonnenberg*, the Seventh Circuit held that websites like PokerStars.com, one of the largest virtual casinos in existence, were not "winners" under the ILRA despite the fact that such sites clearly involve "gambling." *Sonnenberg*, 810 F.3d at 511. The court's rationale was that such websites have "no stake in the outcome of the games played on the site." *Id*. More recently, in *Phillips*, Judge Chang dismissed a proposed class action complaint against the operators of an online casino, in which players used real money to buy virtual chips to use in the defendant's virtual casino. 2016 WL 1169522, at *5-6. Judge Chang concluded that the defendant was not a "winner" of the plaintiffs' gambling losses because it "keeps the money a player pays to buy additional chips no matter whether that player wins or loses in the games" and therefore "there is no way for [the defendant] to lose that money." *Id*. at *6. Judge Chang rejected the plaintiffs' argument that the defendant can be a "winner" or "loser" in the sense that, "if a player wins additional chips then [the defendant] might lose out on the chance to sell more chips to that player, assuming that the player would even choose to buy more chips if he or she ran out (which that player might opt *not* to do)." *Id*. The defendant "still

never puts any of its *own* money at risk in the online games, and risking *potential* future sales is not the same thing." *Id*. "Because no amount of earned money ever hangs in the balance or depends on the outcome of a game," Judge Chang concluded, the defendant "is not a 'winner'" under the ILRA.

Likewise, in this case, Machine Zone keeps the money a player pays to buy additional chips no matter what Prize the player wins in the Casino, and therefore there is no way for Ristic to win or lose that money. If a player wins more valuable Prizes in the virtual Casino, then Machine Zone might lose out on the chance to sell more gold and/or chips to a player who wishes to advance more quickly in the game. And if a player wins less valuable Prizes in the virtual Casino, then there may be a better chance of Machine Zone selling more gold and/or chips to player in the future. But Machine Zone is not putting any of its own money at risk in the game. Its risk of potential future sales is not the same thing, because no amount of Machine Zone's earned money ever depends on the outcome of the game. *Phillips*, 2016 WL 1169522, at *6. In sum, the Court concludes that Ristic cannot state a claim for violation of the ILRA under controlling circuit precedent (*Sonnenberg*) and thus dismisses Count I of Ristic's First Amended Complaint.

### B. Illinois Consumer Fraud Act

Count II of Ristic's complaint is brought under the ICFA, "a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices.'" *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). The elements of a claim for violation of the ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the

defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). A plaintiff may allege that conduct is unfair under the ICFA without alleging that the conduct is deceptive. *Id.*

In this case, Ristic alleges that Machine Zone has acted unfairly, rather than deceptively. [24] at 23-6. There are three considerations that guide an Illinois court's determination of whether conduct is unfair under the ICFA: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers. See *Windy City Metal*, 536 F.3d at 669. All three criteria do not need to be satisfied to support a finding of unfairness. *Robinson*, 775 N.E.2d at 961.

The Court concludes that, taking all of Ristic's factual allegations as true and drawing all inferences in his favor, the First Amended Complaint does not state a plausible claim for violation of the ICFA based on any of the three considerations. First, a practice can offend public policy if it violated a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation. *Boyd v. U.S. Bank, N.A., ex. rel. Sasco Aames Mortg. Loan Trust, Series 2003-1*, 787 F. Supp. 2d 747, 752 (N.D. Ill. 2011). Ristic alleges that Machine Zone's casino violates public policy because it violates Illinois' gambling statutes. [24] at 25. As explained above, Ristic does not allege a viable claim for violation of the ILRA. Nor does Ristic allege that Machine Zone violates any other Illinois anti-gambling statutes. Therefore, Ristic fails to state an ICFA claim based on violation of public policy. See *Soto v. Sky Union, LLC*, 159 F. Supp. 3d 871, 882-83 (N.D. Ill. 2016) (online game, in which players bought virtual gems to roll for chances to win heroes and talents, was not unlawful, and, thus, game operator did not violate ICFA).

Second, conduct is immoral, unethical, oppressive, or unscrupulous under Illinois law only if it imposes a lack of meaningful choice or an unreasonable burden on its target. *Centerline Equipment Corp. v. Banner Personnel Service, Inc.*, 545 F. Supp. 2d 768, 780 (N.D. Ill. 2008); see also *Robinson*, 775 N.E.2d at 962. Here, Ristic made a voluntary choice to purchase virtual gold in the Game of War app. Ristic was enticed by either the enjoyment from playing the Casino, the potential virtual resources that could be acquired, or both. This enticement can be alleged in all cases where consumers have made a purchase and is not exclusive to transactions where consumers have "spent tens of thousands of dollars." [24] at ¶ 86. Ristic argues that his injuries could not "reasonably have [been] avoided given [Machine Zone]'s use of psychological triggers that prompt regular consumers, as well as addicts, to continue wagering for the chance to win something of great value." [24] at 26. But the Casino is only giving players something that has value in the game: once the player buys gold, it can only be used in the game, whether to buy chips and play in the Casino, or to buy items in the virtual marketplace. And while any type of addiction is unfortunate, this Court, like Judge Chang in *Phillips*, does not read the ICFA to protect Ristic from his own decision to play the Casino. See *Phillips*, 2016 WL 1169522, at *8 (plaintiff did not state ICFA claim where she did "not allege that she had no choice but to submit to Double Down's online games, nor could she," because plaintiff "could have picked other forms of entertainment, or even sought to play online games on a different platform or website" and therefore "[t]here was no lack of meaningful choice"); cf. *Mason v. Mach. Zone, Inc*., 140 F. Supp. 3d 457, 469 (D. Md. 2015) ("The Court does not doubt that gambling addiction is a real phenomenon and that the allure of an elusive jackpot can be powerful. Similarly powerful, the Court suspects, is the remorse a buyer may feel when she realizes that she has wittingly swapped her hard-earned cash for simulated gold. The Court does

not sit in judgment of the entertainment choices that Plaintiff and others like her have made—but it will not allow Plaintiff to foist the consequences of those choices onto an entertainment purveyor that, at least on the face of this Complaint, appears to have done nothing wrong.").

Third, "a practice causes substantial injury to consumers if it causes significant harm to the plaintiff and has the potential to cause injury to a large number of consumers." *Wilson v. Harris N.A.*, 2007 WL 2608521, at *8 (N.D. Ill. Sept. 4, 2007) (internal quotation marks and citation omitted). "A practice causes substantial injury "if the injury is (1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) one that consumers themselves could not reasonably have avoided." *Phillips*, 2016 WL 1169522, at *8. Here, Ristic could reasonably have avoided "losing" money in Machine Zone's Casino in a number of ways, including by simply buying the Prizes in Machine Zone's store (a practice that Ristic does not challenge), or playing the free Game of War game without paying to advance his play more quickly. See *id.* (plaintiff did not state ICFA claim where she "failed to show that she could not have reasonably avoided buying additional virtual chips"); cf. *Mason*, 140 F. Supp. 3d at 465-66 (under California law, player of Game of War, who wagered virtual currency in the game's Casino, did not suffer economic injury attributable to game's producer, and thus producer did not violate California's Unfair Competition Law, where player purchased virtual currency with actual money at in-game store, player could not cash out her virtual currency for actual money at any point thereafter, and player could have spent her virtual currency on a number of things within game, including resources to hasten her advancement in game or chips at Casino).

**IV.**     **Conclusion**

For these reasons, the Court grants Machine Zone's motion [20] and dismisses the First Amended Complaint.    Since Ristic has already amended his complaint once and does not propose any additional pleadings that might save his claims, the dismissal of the Amended Complaint is with prejudice and the Court will enter a final judgment under Rule 58.  Finally, the Court denies as moot Ristic's motion to certify a class [4] and Machine Zone's motion to dismiss Ristic's original complaint [20].

Dated: September 19, 2016

Robert M. Dow, Jr.
United States District Judge